# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONRAD L.,[1]<br><br>        Plaintiff,<br><br>   v.<br><br>ANDREW M. SAUL,[2]<br>Commissioner of Social Security,<br><br>        Defendant. | Case No. 5:18-cv-01645-MAA<br><br>**MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

On August 7, 2018, Plaintiff filed a Complaint seeking review of the Commissioner's final decision denying his applications for Disability Insurance Benefits and Supplemental Security Income pursuant to Titles II and XVI of the Social Security Act. This matter is fully briefed and ready for decision. For the reasons discussed below, the Commissioner's final decision is reversed, and this matter is remanded for further administrative proceedings.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The Commissioner of Social Security is substituted as the Defendant pursuant to Federal Rule of Civil Procedure 25(d).

## ADMINISTRATIVE BACKGROUND

On February 27, 2013, Plaintiff filed applications Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning on October 31, 2010. (Administrative Record [AR] 101, 110, 143.) Plaintiff alleged disability because of lower back problems. (AR 101, 110.) After Plaintiff's applications were denied initially (AR 101-18) and upon reconsideration (AR 121-40), and after an administrative hearing (AR 48-75), an Administrative Law Judge ("ALJ") denied the applications in a decision issued on December 28, 2015 (AR 146-155).

On February 28, 2017, the Appeals Council granted review, vacated the ALJ's decision, and remanded the matter for further proceedings. (AR 163-65.) The Appeals Council directed the ALJ to obtain additional evidence concerning Plaintiff's physical and mental impairments, give further consideration to Plaintiff's maximum residual functional capacity, and obtain supplemental evidence from a vocational expert. (AR 163-64.) On July 14, 2017, the ALJ held an administrative hearing. (AR 76-100.) Plaintiff appeared at the hearing with counsel, and the ALJ heard testimony from Plaintiff and a vocational expert. (AR 77.)

In a decision issued on September 19, 2017, the ALJ denied Plaintiff's applications after making the following findings pursuant to the Commissioner's five-step evaluation. (AR 15-29.) Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 31, 2010. (AR 18.) He had severe impairments consisting of degenerative disc disease of the lumbar spine, status post fusion; spondylosis; post laminectomy syndrome; depressive disorder, not otherwise specified; and anxiety disorder, not otherwise specified. (AR 19.) He did not have an impairment or combination of impairments that met or medically equaled the requirements of one of the impairments from the Commissioner's Listing of Impairments. (*Id.*) He had a residual functional capacity to perform "a less than light level of exertional work" with a limitation to simple, repetitive tasks

in a non-public setting with only occasional and superficial interaction with coworkers, and no work in a team setting. (AR 21.) Based on this residual functional capacity, Plaintiff could not perform his past relevant work as a material handler or an athletic trainer. (AR 27.) However, Plaintiff could perform other work in the national economy, in the occupations of marker, routing clerk, and photocopy machine operator. (AR 28.) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (*Id.*)

On June 15, 2018, the Appeals Council denied Plaintiff's request for review. (AR 1-6.) Thus, the ALJ's decision became the final decision of the Commissioner.

## DISPUTED ISSUES

The parties raise three disputed issues:

1. "Whether the ALJ properly considered the treating physician's opinion."

2. "Whether the ALJ conducted a proper residual functional capacity assessment."

3. "Whether the ALJ properly evaluated Plaintiff's testimony."

(ECF No. 23, Parties' Joint Stipulation ["Joint Stip."] at 3.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

# DISCUSSION

For the reasons discussed below, reversal and remand for further administrative proceedings are warranted for Issue Two, based on the ALJ's assessment of Plaintiff's residual functional capacity ("RFC"). Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

A. **Plaintiff's Residual Functional Capacity (Issue Two).**
   1. **Legal Standard.**

A claimant's residual functional capacity represents the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Smolen v. Chater*, 80 F.3d 1273, 1291 (1996). An ALJ's RFC determination "must set out *all* the limitations and restrictions of the particular claimant." *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original). An ALJ will

4

assess a claimant's residual functional capacity "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). A claimant "is ultimately responsible for providing the evidence to be used in making the RFC finding," but an ALJ has "a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (citations omitted).

Here, the ALJ determined that Plaintiff had an RFC for "a less than light level of exertional work" that required, in pertinent part, an ability to "stand and walk for 6 hours out of an 8-hour workday." (AR 21.) Standing and walking for six hours in an eight-hour workday is consistent with light work and signifies "the primary difference between sedentary and most light jobs." *See* Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5-*6. But a claimant's ability to meet the requirements of light work may be eroded by his need to use a cane or other hand-held assistive device to walk. *See* SSR 96-9P, 1996 WL 374185, at *7 (discussing the erosion of the sedentary occupational base by a claimant's use of a medically required hand-held assistive device); *see also Staples v. Astrue*, 329 F. App'x 189, 191 n.1 (10th Cir. 2009) (noting that although SSR 96-9P analyzes the erosion of the sedentary occupational base by a claimant's need to use a hand-held assistance device, the ruling also applies to the erosion of the light occupational base on the same basis); *Contreras v. Berryhill*, 2017 WL 2798521, at *7 (C.D. Cal. June 28, 2017) ("Use of a cane may limit a claimant's ability to perform light work, but it is less likely to preclude sedentary work."). Thus, an ALJ must consider a claimant's need to use a cane that is "medically required." *See* SSR 96-9P, 1996 WL 374185, at *7. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" *Id.*

///

2. **Background.**

In August 2010, while working for a carboard box shipper, Plaintiff injured his lower back while lifting boxes from the floor and throwing them into an overhead container. (AR 504, 552, 1019.) Since then, Plaintiff has reported lower back pain that travels down to his left leg. (AR 552.)

In October 2010, an MRI showed that "[a]t the L5-S1 level, there is degeneration of the intervertebral disc with a broad base bulging of the annular disc margin up to 3 mm." (AR 525.) In June 2011, Plaintiff began one of multiple rounds of physical therapy. (AR 624-25.) In January 2012, an MRI showed "degenerative disk disease and facet joint disease at L5-S1," "concentric bulging of the disks at L5-S1 with posterior annular tear," and "eccentric posterior lateral disk protrusion measuring up to 7 mm on the left side with secondary compromise of the left L5 neural foramen" that "may also affect the L5 root lateral to the level of the neural foramen." (AR 617.)

In November 2012, Plaintiff reported that his physical therapists had "dispensed a cane" to him, but that it gave him blisters so he bought a replacement cane. (AR 652.) In February 2014, Plaintiff underwent a "laminectomy and hemilaminectomy of L5 with partial facetectomy and foraminotomy excision of far lateral disk herniation with microdiscectomy." (AR 891.) In June 2014, an MRI showed degenerative disc disease at L5-S1 status post left hemilaminectomy. (AR 879-80.) In December 2014, a nerve conduction study and EMG were abnormal, suggestive of L5-S1 radiculopathy. (AR 853.)

Physicians and therapists repeatedly observed that Plaintiff used a cane to walk any distance. (See, e.g., AR 552, 560, 708, 775, 848, 851, 871, 882, 988, 993, 1007.) In May 2015, Dr. Georgis, a worker's compensation physician, examined Plaintiff and commented that "[i]t is unclear why he is using the cane, as he does not have significant motor weakness on examination." (AR 1036.) However, Dr. Georgis qualified his conclusions because he had not had the chance to review most

of Plaintiff's medical records: he had not seen any EMG studies (AR 1035, 1036) or indeed any medical records postdating October 2010 (AR 1021), including the records for Plaintiff's surgery in February 2014 (AR 1036).

In July 2015, Dr. Evans, a treating physician, stated that Plaintiff cannot work because he has "chronic low back pain with left lower leg radiculopathy with weakness due to lumbar stenosis, multilevel lumbar degenerative disc disease and facet joint disease." (AR 1043.) In July 2016, Plaintiff underwent an anterior decompression and fusion at L5-S1. (AR 1067, 1075.) In May 2017, Plaintiff reported that he still felt lower back pain and that his knees gave out. (AR 1146.)

In the administrative decision, the ALJ rejected Plaintiff's alleged need to use a cane by agreeing with Dr. Georgis that "there is no objective evidence to support [Plaintiff's] requirement of a cane for ambulation." (AR 26.) Thus, the ALJ's RFC determination (AR 21) and the hypothetical question to the VE on which he relied (AR 93-94) did not incorporate the use of a cane.[3]

### 3. Analysis.

The ALJ found that a cane was not medically required by relying on the observation by Dr. Georgis that "[i]t is unclear why [Plaintiff] is using the cane, as he does not have significant motor weakness on examination." (AR 1036.) However, Dr. Georgis's opinion did not constitute reliable evidence to support that finding.

As noted, Dr. Georgis repeatedly expressed reservations because his review of the record was incomplete. (AR 1021, 1035, 1036.) Thus, he did not review the EMG study or the two most recent MRIs, which were abnormal (AR 617, 853, 879-80), nor did he review the February 2014 surgical record (AR 891). And when he

---

[3] Although the hypothetical question on which the ALJ relied did not incorporate the use of a cane, the ALJ did ask a second hypothetical question (which he later rejected) that added, among other things, the person's need to use a cane. (AR 94-95.) The VE responded that no work would be available because such a person would have too many limitations for an employer to tolerate. (AR 95.)

7

examined Plaintiff in May 2015, Dr. Georgis could not have known that Plaintiff would have another back surgery in July 2016. (AR 1067, 1075.) Indeed, Dr. Georgis ultimately commented that "[t]he extent of the injury is in question in my mind" because he had not reviewed most of the relevant medical evidence. (AR 1036.) Because the ALJ ignored these reservations, he could not rely solely on Dr. Georgis's opinion to find a cane was not medically required. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150-51 (9th Cir. 2001) (holding that, in relying on a medical expert's equivocal opinion, an ALJ "was not free to ignore [the medical expert's] equivocations and his concern over the lack of a complete record upon which to assess [the claimant's] mental impairment").

Moreover, the reliance on Dr. Georgis's equivocal opinion was unreasonable in light of other evidence in the record suggesting that Plaintiff's use of a cane was medically required. Dr. Evans, the treating physician, stated that Plaintiff had "chronic low back pain with left lower leg radiculopathy with weakness due to lumbar stenosis, multilevel lumbar degenerative disc disease and facet joint disease." (AR 1043.) Records of Plaintiff's July 2016 surgery showed abnormality in the lower extremities and severe leg pain. (AR 1067, 1075.) Physicians and therapists repeatedly observed Plaintiff using a cane to walk. (*See, e.g.*, AR 552, 560, 708, 775, 848, 851, 871, 882, 988, 993, 1007.) Objective medical findings included decreased pinprick and vibratory sensation in the left leg (AR 553), positive straight-leg tests on the left side (AR 648, 916), left lower extremity neuropathy (AR 656), and an antalgic gait (AR 988). Plaintiff's physical therapists reportedly "dispensed a cane" to him. (AR 652.)

Although this evidence about Plaintiff's use of a cane does not necessarily demonstrate that a hand-held assistive device was medically required, it is sufficiently extensive to raise questions about that issue such that further development of the record is required. *See Widmark*, 454 F.3d at 1069 (holding that an ALJ must seek additional evidence to fill a "perceived gap in the record"

about a claimant's RFC); *Spaulding v. Astrue*, 379 F. App'x 776, 781 (10th Cir. 2010) (holding that an ALJ should develop the record concerning the medical necessity, if any, for use of a cane where the claimant had been given a cane by the Veterans Administration); *Cano v. Colvin*, 2015 WL 10945616, at *4-*5 (C.D. Cal. Jan. 26, 2015) (reversing based on an ALJ's failure to develop the record concerning the claimant's need to use a cane and collecting several cases reaching varying results as to whether the claimant's use of a cane would erode the relevant occupational base); *see also Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013) (remanding for further proceedings where an ALJ did not address extensive evidence that the claimant used a cane). Thus, reversal is warranted on this basis.

**B.     Remand for further administrative proceedings.**

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence." *Id.* "If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (citation and internal quotation marks omitted).

Although the Court has found legal error in the assessment of whether Plaintiff's use of a cane is medically required, the record on the whole is not fully developed, and essential factual issues remain outstanding. Thus, the record raises factual conflicts about Plaintiff's level of functioning that "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (stating that remand for an award of benefits is inappropriate where "there is

conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Commissioner of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the existing record does not clearly demonstrate that the claimant is disabled within the meaning of the Social Security Act).

Therefore, based on its review and consideration of the entire record, the Court has concluded on balance that a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted here. It is not the Court's intent to limit the scope of the remand.

## ORDER

It is ordered that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.

DATED: October 18, 2019

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE